IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| PAMELA NICOLE HADDAD GONZALEZ | § § § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO: 5:22-cv-00119 |
| | § | |
| RIO GRANDE CARTAGE, SAIA LTL FREIGHT | § § § | |
| Defendants. | § | JURY TRIAL DEMANDED |

PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, PAMELA NICOLE HADDAD GONZALEZ ("Gonzalez" or "Plaintiff") presents this her Original Complaint against Defendants, RIO GRANDE CARTAGE, ("Rio Grande" or "Defendant") and SAIA LTL FREIGHT ("SAIA" or collectively "Defendants") and for causes of action would show the Court as follows:

I.

INTRODUCTION

1. Plaintiff brings this action for sex discrimination, sex harassment, and unlawful retaliation under Title VII and Chapter 21 of the Texas Labor Code.

2. Plaintiff further claims the Defendants willfully violated the FLSA and Equal Pay Act.

II.

PARTIES

3. Plaintiff is a citizen and resident of the State of Texas and resides at 1116 Sapphire St. Laredo, Texas 78045. Plaintiff can be reached through the undersigned counsel.

4. Defendant Rio Grande Cartage is a corporation organized under the laws of Texas, engaged in the business of providing inter-state transportation services. Defendant's headquarters are located

at 8800 San Mateo Dr. Laredo, TX 78045. Defendant's agent for service is Attorney Marc A. Gonzalez, Gonzalez Druker Law Firm, PLLC, 1119 Houston Street, Laredo, TX 78040.

5. Defendant SAIA LTL Freight is a corporation organized under the laws of Texas and is also engaged the business of interstate transportation services. SAIA"'s headquarters are also located at 8800 San Mateo Laredo TX 78045 3120 N. Defendant's agent for service is Attorney Marc A. Gonzalez, Gonzalez Druker Law Firm, PLLC, 1119 Houston Street, Laredo, TX 78040.

### III.

### JURISDICTION AND VENUE

6. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, and pendant and supplemental jurisdiction of the common and state law claims.

7. Venue for all causes of actions stated herein lies in the Southern District of Texas because the acts alleged in this Complaint took place, in whole or in part, within the boundaries of this District pursuant to 28 U.S.C. § 1391. This Court also has pendent jurisdiction over state law claims.

### IV.

### FACTUAL ALLEGATIONS

8. Plaintiff, a white female began her employment with Defendant Rio Grande Cartage on approximately January 2020 as a Security Officer and resigned on or about November 3, 2020.

9. Plaintiff was employed by Rio Grande Cartage, but regularly performed services for SAIA Freight LTL at the direction of Xavier Pena, who was a supervisor with SAIA.

10. Throughout her employment, Plaintiff was subjected to chronic physical and verbal sexual harassment by her male co-worker David Guajardo ("Guajardo") and her male supervisor, Ruben Pena ("Pena"). As a result of this chronic harassment, Plaintiff was forced to endure a sexually hostile work environment as a condition of her employment with Rio Grande and when performing services for SAIA.

11. The unwelcome harassment and hostile work environment caused Plaintiff to suffer extreme and severe emotional distress for which Plaintiff has had to receive extensive counseling and medical treatment. Plaintiff has been diagnosed with Post Traumatic Stress Disorder (PTSD) and has been prescribed multiple medications for stress and anxiety due to the harassment she endured in the workplace.

12. The verbal harassment consisted of numerous inappropriate sexual remarks by Pena whose father, Humberto Pena owns Rio Grande Cartage. Pena took advantage of his father's ownership of the company and was rarely held accountable for his unwelcome actions towards Plaintiff.

13. Plaintiff also received unwelcome advances by Guajardo, who performs security work as well as forklift work for another employer at the same location.

14. Guajardo would constantly ask Plaintiff if he could grab her breasts and one occasion, told Plaintiff that he wanted to have sex with her and that he would cheat on his wife if Plaintiff would agree to have sex with him.

15. On or about February 2020, Plaintiff's supervisor, Pena pulled up to the gate where Plaintiff was working and gave her a small bag. Pena told Plaintiff not to open it until she got home. When Plaintiff arrived home, she opened the bag and discovered that it was a vibrator. She immediately threw it away and became very upset.

16. By September 2020, Pena would stop by where Plaintiff was working every day to speak with her and blow kisses at her. On one of these occasions, Pena told Plaintiff that he wanted to f… the sh.. out of her.

17. Later that same month, Pena came into the office where Plaintiff was working on the office computer. Pena came up behind Plaintiff and then told her to look at him. When Plaintiff turned around and looked at Pena, she could see that Pena had an erection.

18. On another occasion during the same period, Pena came up behind Plaintiff and put his arms in between her arms and around her waist like he was reaching around her to type on the computer. He then began to touch the side of her breasts. Another coworker walked into the office at that time and Pena quickly stepped back and went into the storage room. When Pena came out of the storage room, he showed Plaintiff a photograph of his penis that he had just taken while he was inside the storage room.

19. Pena then went back into the storage room and repeatedly called Plaintiff to go back into the storage room with him. Plaintiff told him "No" and became extremely uncomfortable.

20. On or around October 6, 2020, Plaintiff was leaving work and Guajardo followed her outside. He told Plaintiff that he had found another job and that this was his last day. Guajardo then reached out and grabbed Plaintiff's breasts. She pushed him away and she ran into the supervisor and reported to Pena that Guajardo had grabbed her breasts.

21. When Plaintiff reported to her supervisor, Pena that Guajardo had grabbed her breasts, Pena's only question was whether the in-house surveillance camera had caught the incident. Plaintiff reported that yes, the incident was on the camera. Pena did nothing about the incident.

22. On October 8, 2020, Plaintiff asked her supervisor, Pena what was he going to do about her complaint. Nothing was done.

23. Plaintiff then spoke with Xavier Pena, ("Xavier") manager of SAIA and reported how Guajardo had grabbed her breasts. Xavior watched the footage on the company surveillance camera which showed the Guajardo grabbing Plaintiff's breasts.

24. Plaintiff pressed charges against Guajardo for sexual assault with the Laredo Police Department. Plaintiff was too frightened to take any action against Pena, because he had regularly told Plaintiff stories about having men "jumped" or "picked up" if they messed with him. Pena would tell Plaintiff that if he had problems with anyone, all he had to do was tell his

uncle and father and they would take care of it. Plaintiff believed that Pena was threatening and attempting to coerce her into having sex with him.

25. Plaintiff successfully obtained a restraining order against Guajardo for sexual assault.

26. In addition to enduring sexual harassment and a resulting hostile environment, Plaintiff was never given the health insurance, even though Rio Grande assured Plaintiff at the time of hire that she would have health insurance coverage after three months' employment.

27. Rio Grande Cartage also refused to give Plaintiff a salary increase, even though it had promised Plaintiff at the outset of her employment that she would receive a salary increase after six months' employment.

28. Early on in her employment with Rio Grande, Plaintiff received regular overtime of approximately 3-4 hours per week.

29. As Plaintiff continued to resist the sexual advances of her supervisor and coworker, Plaintiff's overtime hours declined to nothing. The male security officers continued to receive overtime on a regular basis. Plaintiff also learned that the male security officers received a higher hourly wage for doing the same type of work that Plaintiff performed for Defendants.

30. During the same time that Plaintiff's overtime decreased, Plaintiff's duties and responsibilities expanded without any increase in pay. Plaintiff was required to do more and more paperwork. Plaintiff could not do these additional assignments during her regular work hours. In order to complete these additional work assignments, Plaintiff had to take the work home to complete it and would spend up to two to three hours completing the same without being compensated.

31. Plaintiff believes and therefore asserts that the denial of overtime and the unequal pay between herself and the mail security officers were intentional and therefore a willful violation of the FLSA and Equal Pay Act.

32. Plaintiff made repeated complaints to Rio Grande's management about the harassment and deteriorating working conditions. Despite her repeated complaints to management nothing was done to alleviate the harassment or remove her from the sexually hostile environment.

33. Rio Grande told Plaintiff that it would investigate her complaints and report back to her. Plaintiff presented several statements both orally and in writing about the continuing harassment and increasingly hostile work environment, but Defendant never told Plaintiff the results of any investigation and took no action to alleviate the hostile work environment.

34. Consequently, Defendant knowingly allowed the hostile work environment to persist and become increasingly intolerable for Plaintiff.

## V.

### FIRST COUNT

**SEXUAL DISCRIMINATION AND HARASSMENT IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000(E) ET SEQ. AND CHAPTER 21 OF THE TEXAS LABOR CODE**

35. The foregoing paragraphs of this Complaint are incorporated in this count as though fully set forth at length herein.

36. Plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f) Title VII and belongs to a class protected under the statute, namely females.

37. Defendants are employers within the meaning of 42 U.S.C. § 2000e(d) Title VII since both Rio Grande Cartage and SAIA employ more than fifteen employees.

38. Defendants are employers within the meaning of Chapter 21 of the Texas Labor Code

39. Defendants intentionally discriminated against Plaintiff because of her sex in violation of Title VII and Chapter 21 of the Texas Labor Code. by creating a work environment hostile to women.

40. Plaintiff has timely filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") and the Texas Workforce Commission, and has timely filed suit against Defendant within 90 days of her receipt of the Notice of right to Sue.

41. Plaintiff presents evidence that Defendants violated Title VII and Chapter 21 of the Texas Labor Code by intentionally harassing Plaintiff and requiring her to work in a sexually hostile work environment.

42. As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and damages:

    a. Plaintiff suffered mental anguish and emotional distress, as well as loss of enjoyment of life, inconvenience, and general damages; and

    b. Plaintiff suffered lost wages and related benefits.

43. Plaintiff is entitled to an award of attorneys' fees and costs under Title VII, U.S.C. §2000e-5(k).

44. Defendant violated Title VII and Chapter 21 of the Texas Labor Code by discriminating against Plaintiff in connection with compensation, terms, conditions, or privileges of employment because of Plaintiff's sex. Plaintiff was subjected to a continuous course of harassment and worked in a sexually hostile environment.

45. Such discrimination by Defendant against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other non-pecuniary damages. Further, this discrimination was done with malice or with reckless indifference to Plaintiff's federally protected rights. Plaintiff is therefore also entitled to recover punitive damages.

## SECOND COUNT

## VIOLATION OF THE EQUAL PAY ACT

### (As to RIO GRANDE CARTAGE)

46. Plaintiff reasserts, re-alleges, and incorporates herein the allegations set above.

47. At all times relevant herein Defendant Rio Grande Cartage was subject to the FLSA because Defendant is an enterprise engaged in commerce within the meaning of 29 U.S.C. ' 202(a).

48. Pursuant to the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1), Defendant was required to pay Plaintiff comparably to male employees in the same job position.

49. At all times relevant herein, Plaintiff was employed in an enterprise engaged in commerce within the meaning of 29 U.S.C.' 207(a)(l).

50. Defendant paid male employees a higher hourly wage for the same job position that Plaintiff held. Further, Defendant harassed and constructively discharged Plaintiff for her complaints. Defendant's actions were willful and taken with malice and reckless indifference to Plaintiff's protected rights.

51. Plaintiff should have been paid a wage equal to that of the male employees who performed equal work to the work she performed. Likewise, it was illegal to terminate her in retaliation for her complaints of unequal pay.

52. Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, and other future pecuniary losses. Further, the above-listed actions were taken by Defendant with malice or with reckless indifference to Plaintiff's statutorily protected rights. Plaintiff is therefore also entitled to recover punitive damages. Plaintiff also seeks to recover her attorneys' fees, costs of court, pre and post judgment interest, and all other relief to which she may be entitled.

## THIRD COUNT

### UNLAWFUL RETALIATION IN VIOLATION OF 42 U.S.C. § 2000(E) ET SEQ and CHAPTER 21 OF THE TEXAS LABOR CODE.

53. The foregoing paragraphs of this Complaint are incorporated in this count as fully set forth at length herein.

54. Pursuant to 42 U.S.C. s. 2000(E) *et seq.*, an employer commits an unlawful employment practice if the employer retaliates or discriminates against a person who opposes a discriminatory practice; makes or files a charge; files a complaint; or testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

55. The same provision is found in Chapter 21.055 of the Texas Labor Code.

56. Defendants retaliated against Plaintiff after she complained to Defendant about the unwelcome advances and sexually hostile environment in the workplace by constructively discharging Plaintiff's employment.

57. Defendant knowingly and willfully retaliated against Plaintiff for her protected activity in violation of Title VII.

58. Defendant's conduct was malicious and/or taken with reckless disregard for Plaintiff's rights. It was foreseeable by Defendant that Plaintiff would suffer harm as a result of the retaliation and discrimination.

## FOURTH COUNT

### VIOLATION OF THE FAIR LABOR STANDARDS ACT, OVERTIME REQUIREMENTS

(As to Rio Grande Cartage)

59. The foregoing paragraphs of this Complaint are incorporated in this count as fully set forth at length herein.

1. By requiring plaintiff to take work home and perform or otherwise complete off the clock and without pay was a willful violation of Plaintiff's rights under the FLSA and implementing regulations.

2. Defendant's violation of the FLSA was willful.

3. Plaintiffs seek an amount of backpay equal to the underpayment of overtime during the relevant period, together with an equal amount as liquidated damages, attorney's fees, and pre- and post-judgment interest at the highest rate allowed by law.

4. Plaintiff's FLSA claim is timely since the Defendant's actions were knowing and willful.

## VII.

## JURY TRIAL DEMANDED

60. Plaintiff demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that on final trial, Plaintiff have and recover and the following relief against Defendant:

(1) Judgment for actual damages in the amount of past and future lost earnings and benefits and damages to past and future earnings capacity;

(2) Judgment for back pay and front pay as allowed by law;

(3) Damages for past and future mental anguish, emotional distress, and physical distress;

(4) Exemplary damages in an amount to be determined by the trier of fact;

(5) Prejudgment and Post-judgment at the maximum legal rate;

(6) All costs of court;

(7)   Attorneys' fees; and

(8)   Such other and further relief to which Plaintiffs may be justly entitled.

Date:  December 28, 2022.

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By:  /s/ Nicholas A O'Kelly

Clark B. Will
State Bar No. 21502500
Nicholas A O'Kelly
State Bar No. 15241235
(Readmission Application Pending)
**KILGORE LAW CENTER**
3141 Hood St. Suite 500
Dallas, Texas 75219
(214) 379-0827 - Telephone
(214) 953-0133 - Telecopier
email: nao@kilgorelaw.com

**ATTORNEYS FOR PLAINTIFF
PAMELA NICOLE
HADDAD GONZALEZ**